# DAVID SHORTELL *v.* NORMAN CAVANAGH ET AL.
## (SC 18434)

Rogers, C. J., and Norcott, McLachlan, Eveleigh and Vertefeuille, Js.

Argued January 11—officially released March 15, 2011

*James V. Sabatini,* for the appellant (plaintiff).

*Lorinda S. Coon,* with whom were *John M. O'Donnell,* and, on the brief, *Herbert J. Shepardson,* for the appellee (named defendant).

*Opinion*

EVELEIGH, J. This appeal arises from an action in which the plaintiff, David Shortell, claims that he sustained injuries as a result of the failure of the named defendant, Norman Cavanagh, a dentist, to obtain his informed consent to a dental procedure.[1] On appeal,[2] the plaintiff asserts that the trial court improperly dismissed his complaint for failure to comply with General Statutes § 52-190a[3] because he failed to include a good

---

[1] The plaintiff initially named Elliot Berman, another dentist, as a defendant. Subsequently, the plaintiff withdrew his claim against Berman. Accordingly, we refer to Cavanagh as the defendant throughout this opinion.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] General Statutes § 52-190a provides in relevant part: "(a) No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall

faith certificate and written opinion letter from a similar health care provider. We conclude that § 52-190a does not apply to a claim of lack of informed consent because, pursuant to this court's construction of the phrase "medical negligence" in the statute, as set forth in *Dias* v. *Grady*, 292 Conn. 350, 359, 972 A.2d 215 (2009), a claim of lack of informed consent is not a medical negligence claim. Accordingly, we reverse the judgment of the trial court.

In his complaint, the plaintiff alleges the following facts, the truth of which we assume for purposes of this appeal. In December, 2006, the defendant performed a dental implant procedure on the plaintiff and administered anesthesia to the plaintiff. The defendant failed to obtain the plaintiff's informed consent prior to the performance of the implant procedure by failing to disclose the significant risks associated with the procedure. The plaintiff thereafter sustained injuries, including nerve damage, physical pain and suffering, right jaw numbness and mental anguish.

Thereafter, the plaintiff filed a complaint alleging that the defendant had committed negligence by failing to inform him of the significant risks involved in the implant procedure. The plaintiff further alleged that the risks were "significant enough that a reasonable person in the plaintiff's position would have withheld consent to the procedure." The plaintiff did not attach to the complaint either a good faith certificate or the written opinion of a similar health care provider.

not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. . . .

"(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

The defendant filed a motion to dismiss the complaint because of the plaintiff's failure to attach a written opinion letter from a similar health care provider as "mandated by [§ 52-190a]." The plaintiff objected to the motion to dismiss on the ground that a "failure to obtain informed consent cause of action does not require a written opinion from a similar health care provider to be attached to the complaint and it does not require a certificate of good faith." The trial court granted the motion to dismiss on the ground that "[g]iving the information about risk is a necessary part of the appropriate operating procedure and . . . failure to give it and proceeding to operate constitutes malpractice." This appeal followed.

On appeal, the plaintiff contends that § 52-190a is not applicable to his claim of lack of informed consent. Specifically, the plaintiff asserts that because § 52-190a requires a good faith belief that "there has been negligence in the care or treatment of the claimant," it only applies to claims of medical negligence. The plaintiff further claims that because the failure to obtain informed consent does not relate to medical diagnosis, treatment or the exercise of medical judgment, a failure to obtain informed consent does not constitute medical negligence. The defendant counters that obtaining informed consent is part of "care and treatment" and, therefore, § 52-190a applies to claims for lack of informed consent. We agree with the plaintiff on the basis of our decision in *Dias* v. *Grady*, supra, 292 Conn. 359, wherein we concluded that the phrase " 'medical negligence,' as used in § 52-190a, means breach of the standard of care and was not intended to encompass all of the elements of a cause of action for negligence."

The meaning of § 52-190a is a question of law over which our review is plenary. *State* v. *Peters*, 287 Conn. 82, 87, 946 A.2d 1231 (2008). In examining the meaning of a particular statute, we are guided by fundamental

principles of statutory construction. See General Statutes § 1-2z; see also *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008) ("[w]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature" [internal quotation marks omitted]).

We begin our analysis with the language of the statute. Section 52-190a (a) provides in relevant part that, in any medical malpractice action, "[n]o civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. . . . [T]he claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider, as defined in [General Statutes §] 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . ."

In *Dias* v. *Grady*, supra, 292 Conn. 356, we noted that § 52-190a (a) does not define the term medical negligence, and the phrase is susceptible to more than one reasonable interpretation. Specifically, we opined that the term negligence may refer "to the cause of action consisting of the elements of duty, breach of the standard of care, causation and damages . . . ." (Internal quotation marks omitted.) Id. Therefore, we examined both the purpose and the history of § 52-190a. We concluded that the initial purpose of the statute "was

to prevent frivolous medical malpractice actions." Id., 357. Further, we determined that the amendment requiring a written opinion from a similar health care provider; see Public Acts 2005, No. 05-275, § 2 (a); "was intended to address the problem that some attorneys, either intentionally or innocently, were misrepresenting in the certificate of good faith the information that they obtained from the experts." *Dias* v. *Grady*, supra, 358. "With this background in mind, we conclude[ed] that the phrase medical negligence, as used in § 52-190a (a), means breach of the standard of care and was not intended to encompass all of the elements of a cause of action for negligence." (Internal quotation marks omitted.) Id., 359.

In order to prevail on a cause of action for lack of informed consent, a plaintiff must prove both that there was a failure to disclose a known material risk of a proposed procedure and that such failure was a proximate cause of his injury. Unlike a medical malpractice claim, a claim for lack of informed consent is determined by a lay standard of materiality, rather than an expert medical standard of care which guides the trier of fact in its determination. *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 293, 465 A.2d 294 (1983).

In *Dias* v. *Grady*, supra, 292 Conn. 359, we determined that the term medical negligence in § 52-190a referred to a breach of the standard of care. In view of the fact that we were defining the term *medical* negligence, we referred to a medical standard of care and not a lay standard of care. We must interpret § 52-190a so that it does not lead to absurd results. It would not be logical that an opinion from a similar health care provider would be required to commence an action of this nature, when the testimony of a medical expert would not be necessary at trial to prove the standard of care and its breach. We have often recognized that "those who promulgate statutes . . . do not intend to

promulgate statutes . . . that lead to absurd consequences or bizarre results." (Internal quotation marks omitted.) *State* v. *Harrison*, 228 Conn. 758, 765, 638 A.2d 601 (1994). As we stated in *Dias* v. *Grady*, supra, 361, in rejecting a requirement that a similar health care provider give an opinion as to causation because a medical opinion is not required for proving causation, "requiring a similar health care provider to give an opinion . . . at the prediscovery stage of litigation pursuant to § 52-190a when a similar health care provider is not required to give such an opinion at trial pursuant to § 52-184c would bar some plaintiffs who could prevail at trial from even filing a complaint. Because this would lead to a bizarre result, we reject this claim." Likewise, in an informed consent case, the plaintiff is not required to present the testimony of a similar health care provider regarding the standard of care at trial. Therefore, to require an opinion from a similar health care provider at the inception of the case would lead to a bizarre result, which we cannot countenance.

Indeed, the focus of a medical malpractice case is often a dispute involving the correct medical standard of care and whether there has been a deviation therefrom. Conversely, the focus in an action for lack of informed consent is often a credibility issue between the physician and the patient regarding whether the patient had been, or should have been, apprised of certain risks prior to the medical procedure.

The defendant contends that this court recently affirmed an Appellate Court ruling that had determined that the presuit requirement of § 52-190a "arguably . . . sets the bar higher to get into court than to prevail at trial." *Bennett* v. *New Milford Hospital, Inc.*, 117 Conn. App. 535, 549, 979 A.2d 1066 (2009). We disagree. In *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 4, 23–24, 12 A.3d 865 (2011), we affirmed the judgment of the Appellate Court and held that a board certified

general surgeon who would probably qualify to testify as an expert witness at trial pursuant to § 52-184c, was not a similar health care provider to the defendant, a specialist in emergency medicine, for the purpose of the opinion letter under the language of § 52-190a. In *Bennett*, the parties did not dispute that it would be necessary for an expert to testify at trial in order for the plaintiff to establish the medical standard of care. The only question in *Bennett* was, therefore, the propriety of the opinion letter, and whether it had been submitted by a similar health care provider. We conclude, therefore, that *Bennett* is distinguishable from the present case because, in this action for lack of informed consent, the plaintiff would not need to present the testimony of an expert to establish the medical standard of care. Further, it is axiomatic that an expert is, therefore, not required in an informed consent case for the plaintiff to establish a prima facie case in order that the case may be submitted to either the judge or the jury. See, e.g., *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, 254 Conn. 131, 144–45, 757 A.2d 516 (2000) (expert testimony not necessary to establish either existence of duty to inform or degree or extent of disclosure necessary to satisfy duty). It is this clear distinction that leads us to conclude that requiring a plaintiff to obtain an expert opinion and attach it to the complaint in an action alleging lack of informed consent would lead to an absurd result.

Indeed, in adopting the lay standard for actions for lack of informed consent in *Logan* v. *Greenwich Hospital Assn.*, supra, 191 Conn. 289, this court "rejected the traditional standard, which was one set by the medical profession in terms of customary medical practice in the community. . . . Like other courts and legislatures, the court was concerned about [t]he incongruity of making the medical profession the sole arbiter of what information was necessary for an informed deci-

sion to be made by a patient concerning his own physical well-being . . . ." (Citation omitted; internal quotation marks omitted.) *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, supra, 254 Conn. 143. Recognizing this public policy consideration, which prompted the adoption of the lay standard, we conclude that it would frustrate the purpose of using the lay standard for informed consent cases if we were to require a plaintiff in such a case to comply with § 52-190a and attach to the complaint a good faith certificate and written opinion of a similar health care provider.

In support of his claim, the defendant further contends that § 52-190a should be construed in favor of those whom it was intended to benefit. See *Coppola* v. *Coppola*, 243 Conn. 657, 644, 707 A.2d 281 (1998) (remedial statutes must be construed in favor of those whom legislature intended to benefit). Thus, he argues, § 52-190a should be construed in favor of health care providers and in a manner calculated to accomplish its intended purpose. He argues that frivolous or inadequately investigated claims alleging lack of informed consent cause just as much harm to individual health care providers and problems for the health care and insurance systems as other malpractice claims. Moreover, the defendant asserts that if we conclude that § 52-190a does not apply to claims alleging failure to obtain informed consent, parties will bring questionable medical malpractice claims that would ordinarily be barred by the application of § 52-190a, "masquerading as informed consent claims." The defendant asserts that this would adversely affect medical malpractice insurance rates, clog trial court dockets with unsubstantiated claims, and frustrate the intent of the legislature. We disagree. First, an action for lack of informed consent has been part of our common law for many years. In 1983, we established the fact that an informed consent case must be judged by a lay standard. See *Logan*

v. *Greenwich Hospital Assn.*, supra, 191 Conn. 293. We disagree, therefore, that our conclusion that § 52-190a does not apply to actions for lack of informed consent will somehow open the floodgates for a cause of action that has been in existence for decades. Second, attorneys are bound by the Rules of Professional Conduct to bring actions on the foundation of a good faith basis that such actions have merit. Rule 3.1 of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not bring . . . a proceeding . . . unless there is a basis in law and fact for doing so that is not frivolous . . . ." The argument that attorneys will now bring medical malpractice actions "masquerading as informed consent cases" suggests a lack of ethical standards on the part of attorneys to which we do not subscribe. Third, because actions for lack of informed consent have been in existence for decades, medical malpractice insurance rates, indubitably, have already been adjusted by the number of cases that have been commenced over the years. We have not noted an outcry that the dockets are unduly congested due to an overabundance of informed consent cases. Therefore, we find the defendant's arguments to be without merit.

The defendant also contends that the lay standard of materiality does not remove informed consent claims from the reach of § 52-190a. In support of this proposition, he notes that most informed consent cases still require expert evidence. Second, the defendant further asserts that § 52-190a is not limited to cases requiring expert testimony either by its express terms or its rationale. We disagree. As the plaintiff's counsel conceded during oral argument before this court, expert testimony is used in many, but not all, informed consent cases. The distinction to be drawn, however, is that the expert testimony elicited in these cases does not relate to the standard of care. It normally relates only to the types of risks of which a patient is customarily apprised,

the type of procedure, as well as the hazards, anticipated benefits and alternatives to the procedure, if any. See, e.g., *Levesque* v. *Bristol Hospital, Inc.*, 286 Conn. 234, 254, 943 A.2d 430 (2008). Further, although it is true that § 52-190a does not explicitly limit the requirement of a written opinion letter to cases that require expert testimony, we have concluded herein that its application in a case that does not require expert testimony regarding the standard of care would lead to an absurd result.

The defendant concedes that § 52-190a applies to actions for the negligence of a health care provider that constitute medical negligence or malpractice, but argues that it does not apply to actions for negligence of a health care provider that constitute ordinary negligence. The defendant further asserts that the determinative question as to whether § 52-190a applies is whether the alleged injury occurred during treatment due to a negligent act or omission that was substantially related to treatment, not whether an expert is required in the case. We disagree. As we explained previously herein, in *Dias* v. *Grady*, supra, 292 Conn. 359, "we conclud[ed] that the phrase medical negligence, as used in § 52-190a (a), means breach of the standard of care and was not intended to encompass all of the elements of a cause of action for negligence." (Internal quotation marks omitted.) Thus, if an expert is needed to establish the standard of care, a fortiori, an opinion letter is required from a similar health care provider. It is likewise both consistent and logical to hold that if an expert is not required to establish the medical standard of care, an opinion letter is not required under § 52-190a. This is especially true in an action for lack of informed consent where our case law is so well established that the lay standard of materiality of risk is applicable.

We note the defendant's reliance upon *Lambert* v. *Stovell*, 205 Conn. 1, 5, 529 A.2d 710 (1987), which held that an informed consent case is a medical malpractice

case for purposes of the statute of limitations. That decision was rendered, however, before the passage of § 52-190a. Our focus has been on the definition of medical negligence that we ascribed to the statute in *Dias* v. *Grady*, supra, 292 Conn. 359. Therefore, we find the defendant's reliance on *Lambert* misplaced.[4]

---

[4] The defendant also argues that several other states apply their medical malpractice tort reform statutes to informed consent claims. He cites four cases in support of this contention. An examination of the relevant statutes in the cases cited, however, leads us to the conclusion that they are easily distinguishable. The defendant cites *Mood* v. *Kilgore*, 384 Mass. 459, 425 N.E.2d 341 (1981), for the proposition that informed consent claims must go before a medical review panel prior to being brought in court. In Massachusetts, that is a correct statement of the law. Unlike § 52-190a, however, the applicable Massachusetts statute provides in relevant part: "Every action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal consisting of [a trial judge, a physician and an attorney] . . . ." Mass. Ann. Laws c. 231, § 60B (LexisNexis 2009). The phrase "malpractice, error or mistake" is more expansive than the language in § 52-190a (a) referring to "negligence in the care and treatment of the claimant" or "medical negligence . . . ." The defendant also cites *Darwin* v. *Gooberman*, 339 N.J. Super. 467, 772 A.2d 399 (App. Div. 2001), for its conclusion that informed consent claims must comply with presuit affidavit requirements of the New Jersey malpractice statute. Again, the New Jersey statute is different than our statute. It provides in relevant part: "In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall . . . provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care . . . fell outside acceptable professional or occupational standards or treatment practices. . . ." N.J. Stat Ann. § 2A:53A-27 (West 2000). The New Jersey statute clearly covers both malpractice and ordinary negligence claims. Further, the defendant cites *Riggs* v. *West Virginia University Hospitals, Inc.*, 221 W. Va. 646, 656 S.E.2d 91 (2007), which applied West Virginia's medical malpractice award cap statute to an action for lack of informed consent. The court in that case specifically held, however, that the plaintiff had initiated her complaint under the terms of the statute. A review of the wording of that complaint leads us to the conclusion that all of the allegations therein were couched in terms of negligence as a breach of the standard of care. The West Virginia court opined, "[a]ll allegations in the [c]omplaint were phrased in terms of proof required under the [West Virginia malpractice act]." Id., 648. Lastly, the defendant cites the case of *Boruff* v. *Jesseph*, 576 N.E.2d 1297, 1298–99 (Ind. App. 1991), concluding that a physician's breach of a duty to obtain informed consent is malpractice that falls under Indiana's medical malpractice act

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

and requires panel review. A review of Indiana law, however, reveals that, unlike Connecticut, Indiana considers an ordinary negligence case to be within the purview of its medical malpractice statute. Id., 1299. All of the cases cited by the defendant, therefore, are distinguishable on the basis of either the wording of the respective statutes or the definition of negligence as set forth in the statute and interpreted by the respective courts.