ROSANNE LUCISANO *v.* RICHARD J. BISSON ET AL.
(AC 32205)

Beach, Robinson and Alvord, Js.

---

Argued September 16—officially released December 13, 2011

*James V. Sabatini*, for the appellant (plaintiff).

*S. Peter Sachner*, with whom, on the brief, was *Jason T. Prueher*, for the appellants (defendants).

BEACH, J. The plaintiff, Rosanne Lucisano, appeals from the judgment of the trial court granting the motion filed by the defendants, Richard J. Bisson, Jeffrey J. Bisson and Cheshire Dental Associates, P.C., to dismiss her action alleging dental malpractice, failure to obtain informed consent to a surgical procedure and vicarious liability. On appeal, the plaintiff claims that the trial court erred by (1) determining that General Statutes § 52-190a requires that a similar health care provider's opinion letter include the author's credentials and qualifications and (2) dismissing her failure to obtain informed consent claim. We affirm the judgment of dismissal of the plaintiff's dental malpractice claims and their derivative vicarious liability claim, and reverse the dismissal of her claim alleging failure to obtain informed consent and its derivative vicarious liability claim.

In her complaint, the plaintiff alleged the following facts, the truth of which we assume for the purposes of her appeal. On or about January 24, 2004, the Bissons, both dentists, began treating the plaintiff for tooth pain. They performed endodontic[1] treatment on that tooth. The plaintiff, however, continued experiencing pain and developed an infection. The Bissons then performed an apicoectomy[2] on a different tooth of the plaintiff, and on or about June 2, 2006, they extracted the tooth that was initially causing her pain. The plaintiff continued to experience pain.

On December 17, 2007, the plaintiff brought an action against the defendants alleging four causes of action:

---

[1] "Endodontics" is defined as "[a] field of dentistry concerned with the biology and pathology of the dental pulp and periapical tissues, and with the prevention, diagnosis, and treatment of disease and injuries in these tissues." Stedman's Medical Dictionary (27th Ed. 2000) p. 592.

[2] "Apicoectomy" is defined as "[o]pening and exenteration of air cells in the apex of the petrous part of the temporal bone." Stedman's Medical Dictionary (27th Ed. 2000) p. 111.

negligence as to Richard Bisson, negligence as to Jeffrey Bisson, failure to obtain informed consent as to the Bissons, and vicarious liability as to Cheshire Dental Associates, P.C., the Bissons' employer. The plaintiff alleged in the first and second counts of her complaint that the Bissons deviated from the requisite standard of care during her treatment and care, resulting in injury. In the third count, she further alleged that the Bissons failed to inform her of the significant risks associated with the apicoectomy, and, as a result of their failure, she suffered injuries and losses. Finally, in the fourth count, the plaintiff asserted vicarious liability against Cheshire Dental Associates, P.C., on the basis that the Bissons were its agents acting within the scope of their employment. Pursuant to § 52-190a, the plaintiff attached a certificate of good faith signed by her counsel verifying that there had been negligence in her care or treatment. The plaintiff also attached a three page opinion letter that concluded that the Bissons failed to satisfy the standard of care as to the endodontic treatment provided to the plaintiff. No credentials, authorship, or qualifications were included in the opinion letter.

The defendants filed a motion to dismiss on the ground that the plaintiff failed to satisfy § 52-190a, namely, that the opinion letter did not set forth the qualifications of the author, so that it was impossible to ascertain whether he or she was a "similar health care provider." The plaintiff objected to the motion, arguing that such identification and qualifications were not required, that the good faith statement provides assurance that the letter was written by a similar health care provider and that the defendants should have filed a motion to strike rather than a motion to dismiss.

The court granted the defendants' motion to dismiss. The court stated that a motion to dismiss is the proper procedural vehicle by which to challenge the opinion

letter and that the author's credentials and qualifications are required in order to provide a basis from which to determine whether the author was a similar health care provider. The plaintiff filed a motion to reargue and a motion for articulation requesting clarification as to whether the motion to dismiss applied to her informed consent claim. The court granted the motion for articulation and denied the motion to reargue. In its order granting the motion for articulation, the court clarified its reasoning for dismissing the third count, which alleged a lack of informed consent. After acknowledging a split among Superior Court decisions as to whether a lack of informed consent claim against a medical professional must be supported with an opinion letter pursuant to § 52-190a, the court concluded that, because two medical professionals were involved, expert testimony was necessary, and, therefore, the failure to comply with the statute was fatal to the plaintiff's claim. This appeal followed.

I

The plaintiff first argues that § 52-190a does not require that an opinion letter contain information showing that its author is a similar health care provider. She advances three grounds for her argument: (1) the text of the statute does not explicitly require the author to identify himself or herself as a similar health care provider; (2) the good faith certificate, written by the plaintiff's attorney, is sufficient to ensure that the author of the opinion letter is a similar health care provider; and (3) the statute does not invoke the court's subject matter jurisdiction, so that dismissal is not appropriate. We disagree.

The standard of review of a court's ruling on a motion to dismiss is well established. "When the facts relevant to an issue are not in dispute, this court's task is limited to a determination of whether, on the basis of those

facts, the trial court's conclusions of law are legally and logically correct." (Internal quotation marks omitted.) *Tellar* v. *Abbott Laboratories, Inc.*, 114 Conn. App. 244, 249, 969 A.2d 210 (2009). In the present case, there are no material facts in dispute, and thus we are presented with an issue of law. Statutory interpretation issues are questions of law over which our review is plenary. See *State* v. *Gonzalez*, 300 Conn. 490, 499, 15 A.3d 1049 (2011).

## A

The plaintiff first asserts that the language of § 52-190a does not require that the opinion letter include the identity or qualifications of its author. When interpreting a statute, "[we] first . . . consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Cashman*, 283 Conn. 644, 650–51, 931 A.2d 142 (2007).

We begin our review with the language of the statute. Section 52-190a (a) provides in relevant part that in a civil action "in which it is alleged that . . . injury . . . resulted from the negligence of a health care provider . . . the attorney or party filing the action . . . [must make] a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care

or treatment of the claimant. . . . To show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider, as defined in [General Statutes] 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . .'' Section 52-190a does not define ''similar health care provider,'' but the text explicitly refers to the definition in § 52-184c. We must, therefore, read § 52-190a together with § 52-184c,[3] which defines ''similar health care provider.'' See *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 15, 12 A.3d 865 (2011) (''[g]iven the explicit cross-reference in the relevant statutes, we must read § 52-190a [a] in conjunction with § 52-184c, which clearly is a related statute''). Read in conjunction with one another, §§ 52-190a and 52-184c provide a plain and unambiguous definition of ''similar health care provider.''

The plaintiff argues that the language of § 52-190a does not require the author of the opinion letter to

[3] General Statutes § 52-184c provides in relevant part: ''(b) If the defendant health care provider is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similar health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

''(c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'. . . .''

identify that he or she is a similar health care provider or to provide any qualifications. We disagree. The only plausible application of the plain language of §§ 52-190a and 52-184c requires disclosure of qualifications in the opinion letter.

Our Supreme Court recently held that § 52-190a (a) requires a plaintiff to provide an opinion letter authored by a similar health care provider, as defined by § 52-184c, in medical malpractice cases against specialists. See id., 6. The court acknowledged that "similar health care provider" is a term of art. Id., 13–14. In the present case, the three page opinion letter lacks any mention of the author's qualifications, or any indication that he or she is a similar health care provider. Without this information, the trial court was unable to determine whether the letter satisfied the statutory definition of a similar health care provider. The court relied, in part, on *Ribeiro* v. *Elfenbein*, Superior Court, judicial district of Danbury, Docket No. CV-09-5006155-S (October 16, 2009), in which the trial court granted a motion to dismiss, in part, because the opinion letter lacked qualifying information about the author. The court in the present case quoted the *Ribeiro* court: "As submitted, the letter could have been authored by a medical school student or someone other than a physician employed in the medical field. There is simply no way to know, or even infer, from the text of the letter whether it was authored by a similar health care provider."

The attached opinion letter in the present case does not provide adequate information that could be used to determine whether the author is a similar health care provider. Plaintiffs must include this information so that parties and courts are able to determine compliance with § 52-190a. It would be unworkable to hold, as the plaintiff urges,[4] that § 52-190a does not require

---

[4] The plaintiff cites several cases in support of her position that the language of § 52-190a does not require the author's qualifying information. All of these cases, however, predate *Bennett* v. *New Milford Hospital, Inc.*,

the inclusion of qualifying information of the author of the opinion letter. Because a common sense application of §§ 52-190a and 52-184c requires inclusion of qualifying information in the opinion letter, we agree with the trial court's rationale.[5]

## B

In further support of her argument that she satisfied the requirements of § 52-190a, the plaintiff claims that the certificate of good faith, supplied by her attorney, satisfied not only the statutory requirement of the good faith certificate, but also the requirement that the author of the opinion letter be a similar health care provider. The plaintiff reasons that, because her attorney could not ethically have signed a good faith certificate unless the investigation was performed by a similar health care provider, the good faith certificate should be deemed to supply compliance with the statute's requirement that a similar health care provider write the opinion letter. We disagree. Such an interpretation of the statute would dilute the requirement of an opinion letter and would require us to ignore the plain statutory language: "To show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider . . . ." General Statutes § 52-190a (a). "It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose

supra, 300 Conn. 1. The court in *Bennett* analyzed the meaning of "similar health care provider" and how to ascertain whether the statutory definition is satisfied. Without any qualifying information of the author of the opinion letter, a court could not engage in this inquiry. Accordingly, we cannot conclude that the court's reliance on *Bennett* in this case was misplaced.

[5] We note that § 52-190a (c), as well as our Supreme Court's decision in *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 25, requires immediate dismissal of an action if the opinion letter is not by a similar health care provider. If qualifying information is needed at the time the complaint is served, then that information logically must appear in the opinion letter attached to the complaint.

behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Citations omitted; internal quotation marks omitted.) *American Promotional Events, Inc.* v. *Blumenthal*, 285 Conn. 192, 203, 937 A.2d 1184 (2008). As stated in part I A of this opinion, the language of § 52-190a, read in the context of § 52-184c, clearly and unambiguously requires that the qualifications of the opinion letter author be set forth.[6]

## C

The plaintiff further claims that § 52-190a does not invoke the court's subject matter jurisdiction, thus supporting her argument that compliance with the statute does not require the author to supply his or her qualifications as a similar health care provider, and, in fact, this information may be supplied later in the course of discovery. We disagree. Our Supreme Court in *Bennett*

---

[6] It is not necessary to review the legislative history of § 52-190a because we have determined that the meaning of the statute in conjunction with § 52-184c is plain and unambiguous. See *Southern New England Telephone Co.* v. *Cashman*, supra, 283 Conn. 650–51. It is, however, worth noting that the legislative history of § 52-190a does not support the plaintiff's argument. Our Supreme Court recounted the legislative history in *Dias* v. *Grady*, 292 Conn. 350, 357–58, 972 A.2d 715 (2009): "In 2005, the legislature amended § 52-190a (a) to include a provision requiring the plaintiff in a medical malpractice action to obtain the written opinion of a similar health care provider that there appears to be evidence of medical negligence and to attach the opinion to the certificate of good faith to be filed with the complaint. See Public Acts 2005, No. 05-275, § 2 (a) . . . . The legislative history of this amendment indicates that it was intended to address the problem that some attorneys, either intentionally or innocently, were misrepresenting in the certificate of good faith the information that they had obtained from experts. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 18, 2005 Sess., p. 5553, testimony of Michael D. Neubert." (Internal quotation marks omitted.) Accordingly, to find that the attorney's good faith certificate satisfies the statute would frustrate one purpose of the amendment.

concluded that dismissal in the context of § 52-190a is a statutory remedy rather than a matter of subject matter jurisdiction. See *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 26–30. The *Bennett* court addressed the potential harsh effects of dismissal based on insufficiencies in the opinion letter and held that cases in which opinion letters are insufficient are subject to dismissal without prejudice. Id., 30–31; see also *Morgan* v. *Hartford Hospital*, 301 Conn. 388, 403–404, 21 A.3d 451 (2011) (concluding that to provide early resolution of matter, defendants in § 52-190a actions must comply with requirement of Practice Book §§ 10-32 and 10-30 to file motion to dismiss within thirty days of appearance).

Because we find the opinion letter in the present case insufficient and conclude that the good faith certificate alone does not satisfy the requirements of § 52-190a, we hold that dismissal of the dental malpractice claims and their derivative vicarious liability claim was proper. See General Statutes § 52-190a (c) ("the failure to obtain and file the written opinion required by subsection [a] of this section shall be grounds for dismissal of the action"); *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 25 (concluding that "§ 52-190a [c] requires the dismissal of medical malpractice complaints that are not supported by opinion letters authored by similar health care providers").

II

The plaintiff next argues that § 52-190a does not apply to her failure to obtain informed consent claim because the claim does not sound in medical malpractice. We agree.

Our Supreme Court in *Shortell* v. *Cavanagh*, 300 Conn. 383, 15 A.3d 1042 (2011), recently analyzed whether a claim of informed consent was subject to

the requirements of § 52-190a.[7] In *Shortell*, the plaintiff alleged that he suffered injuries as a result of his dentist's failure to obtain his informed consent to a dental procedure. Id., 384. The plaintiff did not attach a good faith certificate or written opinion letter from a similar health care provider pursuant to § 52-190a. Id., 384–85. Relying on its decision in *Dias* v. *Grady*, 292 Conn. 350, 972 A.2d 715 (2009), the court expressly held that § 52-190a does not apply to a claim of lack of informed consent because that claim is not a medical negligence claim. *Shortell* v. *Cavanagh*, supra, 385. In *Dias* v. *Grady*,[8] supra, 359, the court had concluded that the phrase "medical negligence," as used in § 52-190a, means "breach of the standard of care and was not intended to encompass all of the elements of a cause of action for negligence." The *Shortell* court noted that "[u]nlike a medical malpractice claim, a claim for lack of informed consent is determined by a lay standard of materiality, rather than an expert medical standard of care which guides the trier of fact in its determination." *Shortell* v. *Cavanagh*, supra, 388; see also *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 293, 465 A.2d 294 (1983) (establishing lay standard in providing informed consent to patients). Despite recognizing that expert testimony is useful and perhaps required to prove some aspects of many informed consent cases, the court rejected the defendant's argument that the lay standard of materiality does not remove informed consent cases from the applicability of § 52-190a. *Shortell* v. *Cavanagh*, supra, 392–93.

In the present case, the defendants argue that *Shortell* is distinguishable because, in the present case, there

---

[7] The plaintiff's brief does not address *Shortell* because *Shortell* was decided on March 15, 2011, and her brief was filed on January 31, 2011. The case was, however, addressed at oral argument and by the defendants in their brief. We note also that the trial court did not have the benefit of *Shortell*.

[8] *Dias* v. *Grady*, supra, 292 Conn. 359, held that the issue of causation was not required to be addressed in a § 52-190a opinion letter.

is more than one health care provider involved and, accordingly, expert testimony is necessary to establish which provider breached his duty to inform. We disagree. We first note the holding of *Shortell*. In that case, our Supreme Court held that § 52-190a does not apply to a claim of lack of informed consent because that claim is not a medical negligence claim. Id., 385. "Medical negligence," in the context of § 52-190a, refers only to the breach of the applicable standard of care. See *Dias* v. *Grady*, supra, 292 Conn. 359. There is no language in *Shortell* limiting its holding to a certain category of informed consent claims, such as those that do not require expert testimony.

Although our Supreme Court in *Shortell* reasoned that expert testimony was not required to establish the core element of materiality, and thus the logic of inclusion in a § 52-190a letter thereby is less compelling, the requirement of a § 52-190a letter in informed consent claims does not vary according to whether expert testimony will be required as to any issue. *Shortell* v. *Cavanagh*, supra, 300 Conn. 392–93; see also *Dias* v. *Grady*, supra, 292 Conn. 359–60 (court concluded, without regard to whether expert testimony would be required, that opinion about causation in informed consent case not required in § 52-190a opinion letter). The court indeed observed that in informed consent cases, expert testimony is frequently used to establish the nature of the procedure, the risks and benefits, the alternatives, and the expected benefits. *Shortell* v. *Cavanagh*, supra, 392–93. It reasoned that "[t]he distinction to be drawn, however, is that the expert testimony elicited in these cases does not relate to the standard of care." Id., 392. "To prove that a physician has breached the legally required standard of care, a plaintiff must offer some evidence that the conduct of the physician was negligent." *Edwards* v. *Tardif*, 240 Conn. 610, 614, 692 A.2d 1266 (1997). In *Dias* v. *Grady*, supra, 359, the court

found that the term medical negligence in § 52-190a referred to a breach of the standard of care, and in *Shortell* v. *Cavanagh*, supra, 385, the court determined that a claim of lack of informed consent is not a medical negligence claim. The plain language of § 52-190a (a) requires the plaintiff to obtain a written opinion of a similar health care provider that "there appears to be evidence of medical negligence . . . ." General Statutes § 52-190a (a). Although it may be argued in a vacuum that consultation with a patient about various alternatives, and obtaining meaningful consent to the course taken, are aspects of care broadly subject to a "standard of care," the applicable case law imposes a more narrow application in this context. See *Dias* v. *Grady*, supra, 359.

The defendants also rely on *Mason* v. *Walsh*, 26 Conn. App. 225, 600 A.2d 326 (1991), cert. denied, 221 Conn. 909, 602 A.2d 9 (1992), to support their argument that the holding in *Shortell* does not end the inquiry in the present case. The court in *Mason* held that where a urologist and two anesthesiologists treated the plaintiff, the plaintiff should have presented expert testimony concerning which doctor owed a duty to disclose relevant facts for informed consent purposes. Id., 230. The defendants argue that the facts in *Mason* are analogous to the facts of this case and that in cases alleging lack of informed consent in which multiple health care providers are involved, expert testimony is required to establish the existence of the duty to inform. The holding in *Mason*, however, does not support the defendants' claim. *Mason* simply determined that in the context of facts developed at that trial, expert testimony was required to inform the jury's decision as to who had the duty to obtain informed consent. It is not necessarily true that in every case where two or more health care providers are involved, expert testimony will be

required to sort out the duties; the facts of each case may determine whether the answer is obvious. More critically, the definition of "medical negligence," as narrowly defined in our case law for the purpose of § 52-190a; see *Dias* v. *Grady*, supra, 292 Conn. 359; does not necessarily depend on the need for expert testimony on any issue.

Finally, we note the practical implications of our holding for members of the bar. It can often be difficult in an informed consent case to predict at the prediscovery stage whether expert testimony will be required as to some issues. There are practical advantages to bright line determinations. Accordingly, we conclude that the plaintiff's failure to obtain informed consent claim and its derivative vicarious liability claim should not have been dismissed for failing to comply with § 52-190a.

The judgment is reversed only as to the failure to obtain informed consent claim and its derivative vicarious liability claim and the case is remanded for further proceedings on those claims; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.