MARSHAUN W. BELL, ADMINISTRATRIX (ESTATE OF CLARA ANN WOODS), ET AL. *v.* HOSPITAL OF SAINT RAPHAEL
(AC 32338)

Alvord, Espinosa and Bishop, Js.

him, the court did not err in not considering his prejudgment pleadings a writ of audita querela.

Argued September 22, 2011—officially released February 14, 2012

*Susan King Shaw*, with whom was *David A. Shaw*, for the appellants (plaintiffs).

*Michael D. Neubert*, with whom was *Vimala B. Ruszkowski*, for the appellee (defendant).

*Opinion*

ESPINOSA, J. The plaintiff, Marshaun W. Bell, in her capacity as the administratrix of the estate of Clara Ann Woods, the decedent, and in her individual capacity,[1] brought this medical negligence action against the defendant, Hospital of Saint Raphael. The plaintiff appeals from the judgment of the trial court dismissing the action on the ground that the plaintiff failed to satisfy General Statutes § 52-190a by filing a written opinion of a similar health care provider that there appears to be evidence of medical negligence on the part of the defendant. The plaintiff claims that the court improperly determined that the opinion letter filed in

---

[1] We refer in this opinion to Marshaun W. Bell in both capacities as the plaintiff.

the present case failed to demonstrate that the author of the letter was a similar health care provider as defined in General Statutes § 52-184c. We affirm the judgment of the trial court.

The record discloses the following relevant procedural history. The plaintiff initiated this action by a two count complaint dated September 21, 2009. In count one, the plaintiff, in her capacity as administratrix, asserted a wrongful death claim on the basis of the defendant's medical malpractice. She alleged the following relevant facts. At approximately 6:30 a.m. on June 23, 2007, her decedent presented to the defendant's emergency room with various physical symptoms, including elevated blood pressure, and the defendant undertook a duty to render health care services for the decedent's benefit. The decedent's blood pressure continued to be critically elevated and, by 10 a.m., the decedent was unresponsive and in severe respiratory distress. The decedent suffered a massive hemorrhagic stroke, which resulted in her death on June 27, 2007.

The plaintiff alleged that the defendant "breached its duty and the standard of care through the acts, conduct or omissions of its employees, servants, agents and apparent agents, or any one or more of them" in a variety of ways related to the treatment afforded the decedent.[2] The plaintiff alleged that as a result of the

---

[2] The plaintiff alleged that the defendant breached its duty in the following ways:

"(a) in that it failed to take appropriate steps to address the plaintiff's decedent's critically high blood pressure on admission;

"(b) in that it failed to notify appropriate staff of the critically elevated nature of the plaintiff's decedent's blood pressure;

"(c) in that it failed to take any steps to lower the blood pressure despite consecutive and critically elevated blood pressure readings while the plaintiff's decedent was still conscious and responsive in the emergency room;

"(d) in that it failed to ensure the administration of appropriate medication to lower the plaintiff's decedent's blood pressure or to notify appropriate staff of the severity of the plaintiff's decedent's vital signs;

"(e) in that it failed to monitor the plaintiff's decedent's progress, resulting in a significant lapse of time during which the plaintiff's decedent was

breach of the duty of care by the defendant, the decedent "suffered a massive hemorrhagic stroke which resulted in her death on June 27, 2007," the decedent suffered pain and permanently lost her ability to enjoy life's activities and the decedent's estate has incurred various expenses. In count two of the complaint, the plaintiff, in her individual capacity, alleged that as a result of the defendant's breach of the duty of care owed the decedent as set forth in count one, she "has incurred and become obligated to pay for hospital and medical treatment and funeral and burial expenses."

Attached to the complaint was a good faith certificate signed by the plaintiff's attorney. The plaintiff's attorney represented therein that, following a reasonable inquiry by her, she believed in good faith that grounds existed for a medical malpractice action against the defendant. Additionally, the plaintiff attached a document entitled "Health Care Provider's Opinion Pursuant to [General Statutes §] 51-190a."[3] The letter stated in relevant part: "After a careful review of all of the documentation from this case, I have concluded that the staff at [the defendant] neglected to properly provide adequate or safe care for [the decedent]. The significant lack of intervention for critical vital signs is a clear source of deviation from a standard of emergency medical care

---

unconscious, in severe respiratory distress and unattended by staff;

"(f) in that it failed to discover the plaintiff's decedent's condition;

"(g) in that it failed to take any precautions to prevent the plaintiff's decedent from suffering a stroke;

"(h) in that it failed to take into consideration the plaintiff's decedent's history of hypertension and pre-existing conditions in formulating an appropriate plan of care;

"[i] [in that it] failed to promulgate or reinforce rules, regulations, standards, protocols and bylaws for the care of patients such as the plaintiff's decedent; and

"[j] in that it failed to act in a reasonable and prudent fashion in light of the circumstances and conditions then and there prevailing."

[3] It appears that the plaintiff's reference to *§ 51-190a* rather than to *§ 52-190a*, which clearly applies to the issue at hand, is a scrivener's error.

which rose to the level of answerability for her untimely death."

The opinion letter set forth specific facts related to the decedent's condition at the time that she arrived at the hospital. The letter also set forth specific ways in which hospital staff failed to provide adequate or appropriate care, conduct that allegedly "led to a hemorrhagic stroke and [the decedent's] untimely death." The following initials appear at the end of the letter: "RN, BSN, ICP."

Thereafter, the defendant filed a motion to dismiss on the ground that the plaintiff failed to attach to the good faith certificate "a written opinion letter of a similar health care provider indicating that there is evidence of medical negligence on the part of the [defendant's] Emergency Department." The plaintiff filed an objection to the motion. Both parties filed memoranda of law in support of their respective positions. Attached to the plaintiff's postargument brief was an affidavit of the plaintiff's attorney in which she averred in relevant part that she "[was] personally familiar with the author of the opinion letter in this case . . . ." She stated that "[t]he author has been a Registered Nurse in the State of Connecticut for a period of eleven years; she is licensed to practice in the State of Connecticut." Also, the plaintiff's attorney stated that "[t]he author holds a Bachelor's Degree from an accredited University in the State of Connecticut" and "[t]he author's professional experience includes over ten years of acute, subacute and long term nursing care, including working in a trauma center in Connecticut."

In support of its motion to dismiss, the defendant filed the affidavit of Alan S. Kliger, its vice president, chief medical officer and chief quality officer. Kliger averred that at the time of the events underlying the plaintiff's complaint "the Emergency Department at the

[defendant] had its own entry point and was a clearly designated area of the [defendant]" and "the Emergency Department was an area of the [defendant] staffed by health care providers trained, experienced and familiar in the delivery of emergency care and treatment." Also, Kliger stated that "[t]he [defendant] holds its Emergency Department out as a specialized area of the [defendant] where patients can obtain emergency care and treatment, and did so at the time of the underlying incident." Finally, Kliger stated that the defendant was designated as a level II trauma center and that, "[a]t the time of the underlying incident the care and treatment of Emergency Department patients at the [defendant] was managed either by an Emergency Department physician or physician's assistant."

In a May 25, 2010 memorandum of decision, the court granted the defendant's motion to dismiss. The court summarized the key arguments advanced by the parties. The defendant argued that the author of the opinion letter purported to be a registered nurse and was not a "similar health care provider" under § 52-184c. Specifically, the defendant argued that in light of the allegations that negligence occurred in its emergency department, the plaintiff was required by § 52-184c (c) to provide an opinion letter from a person with training, experience and proper certification in emergency medicine, something that the plaintiff did not do.

The plaintiff countered that because she alleged negligence on the part of an institution rather than a specific health care provider, it was not practical to require her to comply strictly with § 52-190a (a). Rather, the plaintiff attempted to persuade the court that in light of the specific allegations in her complaint she complied with the statute by providing the opinion of a health care provider as defined in § 52-184c (b).

The court concluded that § 52-190a (a) required the plaintiff to provide an opinion letter of a similar health

care provider as defined in § 52-184c. Given the allegations in the complaint, the court concluded that "a similar health care provider is defined by the terms of . . . § 52-184c (b)." The court reasoned that a registered nurse was not necessarily precluded from authoring the letter because the allegations in the complaint were broad enough that some of them were encompassed by the practice area of a registered nurse. Thus, the court disagreed with the defendant's contention that the letter was required to have been written by a physician board certified in emergency medicine. The court, however, took issue with the absence of information concerning the author's qualifications, concluding: "The submitted opinion letter, even when supplemented with counsel's affidavit, does not contain sufficient facts to satisfy the court that the author of the [opinion] letter meets the requirements of § 52-184c (b) to qualify as a 'similar health care provider' to the defendant." In reaching its conclusion, the court observed that the letter did not set forth the author's qualifications related to licensing, training, experience or any active involvement in any medical field during the five year period prior to the incident underlying the complaint. Accordingly, the court dismissed the action pursuant to § 52-190a (c). This appeal followed.

The plaintiff claims that the court improperly dismissed the action on the ground that the opinion letter did not reflect that its author was a similar health care provider. The plaintiff argues that insofar as it conveyed that the author was a registered nurse who held a bachelor of science degree in nursing the letter set forth some of the author's qualifications. The plaintiff also relies on the averments of her trial attorney concerning the author's qualifications. The plaintiff does not appear to argue that the letter addressed all of the qualifications of a similar health care provider, but asserts that dismissal

was not warranted "because there was sufficient information provided [to the court] to infer the good faith inquiry of the plaintiff in this case." She asserts that, although § 52-190a (a) requires that a similar health care provider set forth the basis of his or her opinion in a written letter, there is no statutory authority requiring that such health care provider, in the letter, set forth facts concerning his or her qualifications. Finally, the plaintiff urges us to conclude that § 52-190a (a) merely requires a showing that a good faith inquiry has been made but that "[i]t is premature to test the sufficiency of the good faith until after discovery has been completed." Thus, the plaintiff asserts that the dismissal of the action was unwarranted.

The defendant argues that, although § 52-184c (b)[4] requires that a similar health care provider have appropriate licensing and training, the plaintiff did not demonstrate that the author of the letter in the present case had such licensing and training and, thus, was qualified to render an opinion as to the standard of care owed by the defendant's emergency department. The defendant agrees with the trial court that §§ 52-184c (b) and 52-190a (a) must be read together as requiring that the opinion letter set forth the author's qualifications. The defendant disagrees that the plaintiff's attorney, by way of affidavit, properly could supplement the information in the opinion letter. Further, the defendant argues that,

[4] As it did before the trial court, the defendant maintains that the plaintiff was required to present an opinion letter authored by a "similar health care provider" as defined by § 52-184c (c), a health care provider that is certified as a specialist. On appeal, the plaintiff does not claim that her compliance with § 52-190a (a) was not required by law and, thus, that she was not required to submit an opinion letter of a similar health care provider. We conclude in this appeal that dismissal was warranted because the opinion letter at issue in the present case failed to demonstrate that its author possessed the qualifications of a "similar health care provider" as defined in either § 52-184c (b) or (c). Accordingly, in reviewing the judgment of the trial court, it is unnecessary for us to determine which subsection of § 52-184c applies.

even if the filing of the affidavit was procedurally proper, the information before the court was still deficient with regard to all of the qualifications of the author of the opinion letter. Finally, the defendant urges us to reject the plaintiff's argument that the court, having concluded that the opinion letter was not authored by a similar health care provider, was not legally required to dismiss the action.

We begin our analysis by setting forth relevant statutory provisions. General Statutes § 52-190a (a) provides in relevant part: "No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. *To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . . The claimant or*

*the claimant's attorney, and any apportionment claimant or apportionment claimant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. . . .* In addition to such written opinion, the court may consider other factors with regard to the existence of good faith. . . ." (Emphasis added.)

Section 52-190a (c) provides: "The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

General Statutes § 52-184c (b) provides: "If the defendant health care provider is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similar health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

Section 52-184c (c) provides: "If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in

the treatment or diagnosis for that condition shall be considered a 'similar health care provider.' "

The legislature enacted § 52-190a (a), in its initial form, to require the filing of a good faith certificate by a claimant or a claimant's attorney "to discourage the filing of baseless lawsuits against health care providers." *LeConche* v. *Elligers*, 215 Conn. 701, 710, 579 A.2d 1 (1990). "The purpose of the certificate is to evidence a plaintiff's good faith derived from the precomplaint inquiry. It serves as an assurance to a defendant that a plaintiff has in fact made a reasonable precomplaint inquiry giving him a good faith belief in the defendant's negligence." Id., 711. Later, the legislature amended § 52-190a to require the filing of an opinion letter of a similar health care provider. See Public Acts 2005, No. 05-275, § 2. "The legislative history of this amendment indicates that it was intended to address the problem that some attorneys, either intentionally or innocently, were misrepresenting in the certificate of good faith the information that they had obtained from experts." *Dias* v. *Grady*, 292 Conn. 350, 357–58, 972 A.2d 715 (2009).

Our Supreme Court has treated the failure to supply an opinion letter from a similar health care provider, when such failure was not the result of egregious conduct or gross negligence on the part of the plaintiff or his attorney, as a matter of form; see *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 46–47, 12 A.3d 885 (2011); and has concluded that the failure of a claimant to attach a proper written opinion letter implicates personal jurisdiction. In *Morgan* v. *Hartford Hospital*, 301 Conn. 388, 401, 21 A.3d 451 (2011), the court stated: "[T]he attachment of the written opinion letter of a similar health care provider is a statutory prerequisite to filing an action for medical malpractice. The failure to provide a written opinion letter, or the attachment of a written opinion letter that does not comply with

§ 52-190a, constitutes insufficient process and, thus, service of that insufficient process does not subject the defendant to the jurisdiction of the court."

The defendant properly challenged the court's jurisdiction by filing a timely motion to dismiss the plaintiff's action. See Practice Book §§ 10-6 and 10-30; *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 29, 12 A.3d 865 (2011) ("a motion to dismiss pursuant to § 52-190a [c] is the only proper procedural vehicle for challenging deficiencies with the opinion letter"). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a . . . question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Bennett* v. *New Milford Hospital, Inc.*, supra, 10–11. Here, there is no dispute as to the content of the materials filed by the plaintiff. The issue may be distilled to whether, as a matter of law, the service of process initiated by the plaintiff was inadequate because the plaintiff failed to attach to the good faith certificate a *sufficient* written opinion letter of a similar health care provider.

As a preliminary matter, there is no disagreement on appeal that the complaint alleged negligence in the care or treatment of the plaintiff's decedent by the defendant health care provider such that compliance with the requirements of § 52-190a was necessary. See *Shortell*

v. *Cavanagh*, 300 Conn. 383, 393, 15 A.3d 1042 (2011) ("if an expert is needed to establish the standard of care, a fortiori, an opinion letter is required from a similar health care provider"). After carefully reviewing the record, we agree with the assessment of the trial court that the opinion letter submitted in the present case did not set forth sufficient information to demonstrate that its author was a similar health care provider qualified to render an opinion as to the standard of care owed by the defendant. With regard to the qualifications of its author, the only thing that may be gleaned from the opinion letter is that the author is a registered nurse with a bachelor of science degree in nursing. As set forth previously, § 52-184c (b) requires that a similar health care provider be "licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications," that such provider have training and experience in the "same discipline or school of practice" and that such training and experience must "be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim." Plainly, the information in the opinion letter did not address, let alone demonstrate, all of these specific qualifications. Nor, for purposes of § 52-184c (c), did the opinion letter represent that its author had been trained and experienced in any specialty or had been certified by any American board as a specialist.[5]

It is the plaintiff's contention that the opinion letter was sufficient despite failing to demonstrate that the

---

[5] Although the court questioned whether it was proper for the plaintiff's attorney to supplement the information set forth in the opinion letter, the court concluded nonetheless that, even if it considered the averments of the plaintiff's attorney concerning the author's qualifications, the letter and the attorney's affidavit did not address all of the relevant qualifications. Because we conclude that the opinion letter, even when supplemented with the affidavit, did not disclose all of the qualifications set forth in either § 52-184c (b) or (c), it is unnecessary in this case for us to address the defendant's argument that such supplementation of the letter was improper.

author has met these specified qualifications. A recent decision of this court has resolved the issue of whether § 52-190a requires that an opinion letter contain information showing that its author is a similar health care provider. In *Lucisano* v. *Bisson*, 132 Conn. App. 459, 466, 34 A.3d 983 (2011), this court held that "[t]he only plausible application of the plain language of §§ 52-190a and 52-184c requires disclosure of qualifications in the opinion letter." The analysis and holding of *Lucisano* controls our resolution of the plaintiff's argument concerning the sufficiency of the opinion letter.[6]

Insofar as the plaintiff asserts that the legislature merely required a showing of good faith and that, at the time that the defendant filed the motion to dismiss, it was somehow premature to examine the qualifications of the author of the opinion letter, we are not persuaded. We already have discussed that a motion to dismiss is the proper procedural vehicle for challenging the sufficiency of an opinion letter and determined that an opinion letter must demonstrate that its author meets the qualifications of a similar health care provider. Recently, in *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 28, our Supreme Court held that "dismissal is the mandatory remedy when a plaintiff fails to file an opinion letter that complies with § 52-190a (a)." This controlling precedent defeats the plaintiff's argument that the immediate dismissal of the plaintiff's action was improper.

The judgment is affirmed.

In this opinion ALVORD, J., concurred.

---

[6] Contrary to the concurring opinion's characterization, we do not interpret this court's case law to require that the letter "contain a complete exposition of the health care provider's bona fides," but merely that it disclose that the health care provider possesses the qualifications set forth in § 52-184c.

BISHOP, J., concurring. Connecticut's judiciary serves the interests of justice and the public by "resolving matters brought before it in a fair, timely, efficient and open manner." Connecticut Judicial Branch, Mission Statement, available at http://www.jud.ct.gov/. This policy finds its genealogy in the constitution of Connecticut which provides, in article first, § 10: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Decisional law amplifies this basic tenet of our jurisprudence. Our Supreme Court has stated that there exists a "judicial policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Internal quotation marks omitted.) *Pietraroia* v. *Northeast Utilities*, 254 Conn. 60, 74, 756 A.2d 845 (2000). The availability of our courts to resolve disputes can, of course, be reasonably limited by jurisdictional as well as prudential constraints. I agree, as well, that the availability of the courthouse may also be made subject to reasonable regulation such as the imposition of reasonable use fees, compliance with behavioral norms, and other policy driven limitations created by the legislature. General Statutes § 52-190a (a) represents such a restriction. But, because this statute acts as a limitation on an individual's access to court, I believe its prescriptions must be narrowly construed and not augmented by unlegislated, judicially imposed requirements. In adopting the view that § 52-190a requires not only that a complaint be accompanied by a letter from a health care provider similar to the defendant, but that the letter, itself, must also contain a complete exposition of the health care provider's bona fides, I believe that this court has not only written a

new requirement into the statute but, by broadly construing the statute, has frustrated Connecticut's tradition of open courts available to all for the resolution of disputes.

Section 52-190a (a) provides in relevant part: "No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. *To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written*

*opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. . . . In addition to such written opinion, the court may consider other factors with regard to the existence of good faith.* If the court determines, after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative shall impose upon the person who signed such certificate or a represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. . . ." (Emphasis added).

Nowhere in this statutory language do I find a requirement that the letter from a similar health care provider contain an elucidation of the writer's qualifications. Nonetheless, and as noted by the majority, this court recently has held that § 52-190a mandates that a similar health care provider's opinion letter include a recitation of the author's credentials and qualifications. See *Lucisano* v. *Bisson*, 132 Conn. App. 459, 466, 34 A.3d 983 (2011). I agree with the outcome reached by the majority in the case at hand because we are presently bound by this court's ruling in *Lucisano*. I write separately, however, because I believe that such an interpretation of § 52-190a goes beyond the prescriptions of the statute, imposing an extra hurdle limiting a plaintiff's access to court not warranted either by application of the statute's plain meaning or by the judiciary's promise to openly hear and fairly resolve grievances brought to it for resolution.

For the reasons stated, I respectfully concur.