******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JOANN RICCIO, EXECUTRIX (ESTATE OF THERESA RICCIO) *v.* THE BRISTOL HOSPITAL, INC.
## (SC 20529)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to the accidental failure of suit statute (§ 52-592 (a)), "[i]f any action, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . because the action has been . . . avoided or defeated . . . for any matter of form," the plaintiff may commence a new action for the same cause within one year after the determination of the original action.

Pursuant to this court's decision in *Plante* v. *Charlotte Hungerford Hospital* (300 Conn. 33), a plaintiff may bring a subsequent medical malpractice action pursuant to the matter of form provision of § 52-592 (a) only when the trial court finds that the failure in the first action to provide a legally sufficient opinion letter from a similar health care provider pursuant to statute (§ 52-190a (a)) was the result of mistake, inadvertence, or excusable neglect, rather than egregious conduct or gross negligence on the part of the plaintiff or his or her attorney.

The plaintiff, the executor of R's estate, filed a medical malpractice action against the defendant hospital, alleging that certain of its employees had negligently caused R's death. The trial court dismissed that action, concluding that the plaintiff's attorney, Z, had failed to file legally sufficient medical opinion letters with the plaintiff's complaint, as required by § 52-190a (a) and prior Appellate Court case law interpreting that statutory provision, as those opinion letters did not disclose the professional qualifications of their authors. The plaintiff did not appeal from the trial court's judgment of dismissal but, instead, commenced the present action under § 52-592, which was based on the same malpractice claims asserted in her prior action, approximately five months after the statute of limitations expired. The trial court rendered judgment dismissing the action as time barred, concluding that § 52-592 did not apply because Z's failure to include in the opinion letters the qualifications of their authors was not a matter of form due to mistake, inadvertence, or excusable neglect. On the plaintiff's appeal, *held* that the trial court correctly concluded that § 52-592 did not save the plaintiff's otherwise time barred action, the plaintiff having failed to meet her burden of proving that Z's failure to file legally sufficient medical opinion letters in the first action was the result of a mistake, inadvertence, or excusable neglect, rather than egregious conduct or gross negligence: having reviewed the meanings of "gross negligence" and "egregious" in case law and dictionaries, and having reviewed cases in which courts were required to place an attorney's conduct on the spectrum between excusable neglect and gross negligence, including cases involving the matter of form provision in § 52-592, this court could not conclude, on the basis of the evidence in the record, that Z's lack of knowledge of and failure to comply with the requirement, established by two Appellate Court cases interpreting § 52-190a (a), that an opinion letter include the professional qualifications of its author was the result of a mistake, inadvertence, or excusable neglect, rather than egregious conduct or gross negligence; Z had been practicing medical malpractice law for more than ten years before he filed the plaintiff's first action, the adequacy of an opinion letter is one of the most frequently litigated pretrial issues in medical malpractice actions, the two Appellate Court cases of which Z was unaware were decided at least six years before the plaintiff's first action was filed, in the six year period after those two cases were decided, Z filed five medical malpractice actions in which he had failed to comply with the requirement established by those cases, and Z acknowledged that, prior to filing the plaintiff's first action, he had not read those Appellate Court cases; accordingly, this was not a situation in which Z inadvertently omitted necessary information from the opinion letters, as Z was completely unaware of the requirement to include the

authors' qualifications in the letters, and even cursory research into the requirements for such opinion letters would have revealed this particular requirement.

Argued February 19, 2021—officially released January 13, 2022*

*Procedural History*

Action to recover damages for the wrongful death of the plaintiff's decedent as a result of the defendant's alleged medical malpractice, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Morgan, J.*, granted the defendant's motion to dismiss and rendered judgment for the defendant, from which the plaintiff appealed. *Affirmed.*

*Joseph Peter Zeppieri*, with whom, on the brief, was *Kevin Ferry*, for the appellant (plaintiff).

*Michael G. Rigg*, for the appellee (defendant).

*Opinion*

McDONALD, J. The appeal in this medical malpractice action requires us to determine whether the trial court correctly concluded that the accidental failure of suit statute, General Statutes § 52-592,[1] did not save the otherwise time barred action of the plaintiff, Joann Riccio, executrix of the estate of Theresa Riccio, because her first medical malpractice action was dismissed due to her attorney's gross negligence for failing to file with her complaint legally sufficient medical opinion letters, as required by General Statutes § 52-190a (a) and two Appellate Court decisions interpreting that statute. Specifically, we must determine whether the plaintiff met her burden of proving that her attorney's admitted failure to know of two Appellate Court decisions, issued six years before she initiated the first action, was a mistake, inadvertence, or excusable neglect rather than egregious conduct or gross negligence. We agree with the trial court that the plaintiff has not met her burden and, therefore, affirm its judgment.

The record reveals the following relevant facts and procedural history. On May 3, 2018, the plaintiff filed a medical malpractice action (*Riccio I*) against the defendant, The Bristol Hospital, Inc., alleging that various doctors and nurses negligently caused the death of the decedent. The trial court dismissed *Riccio I* for lack of personal jurisdiction because the plaintiff failed to file with her complaint legally sufficient medical opinion letters as required by § 52-190a (a) and General Statutes § 52-184c. Specifically, the court in *Riccio I* held that, under *Lucisano* v. *Bisson*, 132 Conn. App. 459, 466, 34 A.3d 983 (2011), and *Bell* v. *Hospital of Saint Raphael*, 133 Conn. App. 548, 560–61, 36 A.3d 297 (2012), the submitted opinion letters were legally insufficient because neither disclosed the author's professional qualifications. The plaintiff did not appeal the court's dismissal of *Riccio I*.

On October 9, 2018, the plaintiff commenced this action (*Riccio II*) under the accidental failure of suit statute, § 52-592. In her complaint, the plaintiff alleged, among other things, that *Riccio I* was dismissed due to the plaintiff's "mere mistake or inadvertence" in failing to include the credentials of the experts in the opinion letters attached to the original complaint. The defendant moved to dismiss *Riccio II* for lack of subject matter jurisdiction, claiming, among other things, that the dismissal of *Riccio I* was not a "matter of form" within the meaning of § 52-592, and, thus, *Riccio II* could not be saved under the accidental failure of suit statute.

The trial court noted that the two year statute of limitations for a wrongful death action, having been extended ninety days pursuant to § 52-190a (b), expired on May 11, 2018, and *Riccio II* was commenced approxi-

mately five months after the statute of limitations had expired. Thus, the court concluded that the action was time barred unless § 52-592 applied.

The trial court held an evidentiary hearing on the issue of whether § 52-592 applied to this action. During the hearing, the sole witness was one of the plaintiff's attorneys, Joseph Zeppieri. The court found that Zeppieri has been practicing law since 2006 and that, prior to attending law school, he practiced medicine for more than thirty years. Zeppieri has been involved in medical malpractice cases since his admission to the bar, and, since 2012, after *Lucisano* and *Bell* were decided, he has represented clients in five medical malpractice actions and has joined with other counsel in a sixth action.[2] The court also found that, prior to filing *Riccio I*, Zeppieri, by his own admission, had not read the Appellate Court's decisions in *Lucisano* or *Bell*. He only became aware of those decisions when the defendant filed its motion to dismiss in *Riccio I*. During the hearing, Zeppieri acknowledged that it was a mistake not to have been aware of controlling case law before commencing *Riccio I* but contended that his error was an "insubstantial technical mistake." No other evidence was introduced at the hearing.

The trial court ultimately rejected the plaintiff's contention that the failure to articulate the experts' credentials in their opinion letters was simply a matter of form due to mistake, inadvertence, or excusable neglect.[3] The court explained that, if Zeppieri had read *Lucisano* or *Bell*, he would have known that the opinion letters he solicited and obtained for *Riccio I* were legally insufficient and would render the action subject to dismissal. The court also noted that Zeppieri offered no explanation for his "misconduct." It reasoned: "The adequacy of a 'similar health care provider' opinion letter is one of the most frequently litigated pretrial issues in medical malpractice actions. Given the law in Connecticut at the time *Riccio I* was commenced, the plaintiff's counsel reasonably could not have believed that the opinion letters they supplied complied with § 52-190a. Counsel's admitted failure to read and comply with controlling appellate precedent, decided more than six years before *Riccio I* was filed, is egregious, inexplicable, and inexcusable conduct." The court then concluded: "[T]he court finds on the facts before it that the plaintiff's counsel's lack of diligence in knowing and complying with Appellate Court precedent is blatant and egregious conduct that was not intended to be condoned and sanctioned by the 'matter of form' provision of § 52-592. Simply put, the plaintiff's counsel's ignorance of the law in this case does not constitute excusable neglect. 'The familiar legal maxims, that everyone is presumed to know the law, and that ignorance of the law excuses no one, are founded [on] public policy and in necessity, and the idea [behind] them is that one's acts must be considered as having been done with

knowledge of the law, for otherwise its evasion would be facilitated and the courts burdened with collateral inquiries into the content of men's [and women's] minds.' " The court explained that, because the plaintiff "failed to meet her burden of demonstrating that the dismissal of *Riccio I* was a matter of form, the plaintiff [could not] avail herself of the accidental failure of suit statute." Accordingly, the court dismissed *Riccio II*, concluding that the action was time barred.

On appeal, the plaintiff claims that the trial court incorrectly determined that the omission of the experts' qualifications in their letters was egregious conduct rather than a matter of form or a mistake. Specifically, the plaintiff argues that the court did not place Zeppieri's actions on the continuum of mistake, inadvertence, or excusable neglect, on the one hand, and dismissal for egregious conduct or gross negligence, on the other, as required by *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 50–51, 56, 12 A.3d 885 (2011). Rather, the plaintiff contends, the trial court improperly applied the legal maxims " 'that everyone is presumed to know the law, and that ignorance of the law excuses no one . . . .' " As a result, the plaintiff argues, the trial court essentially created a rule that the failure to know the law is per se gross negligence and could never be considered mistake, inadvertence, or excusable neglect.[4]

The defendant notes that "[t]he plaintiff bears the burden of proving that her failure to comply with § 52-190a was the result of 'mistake, inadvertence or excusable neglect,' which is a factual question." The defendant contends that the trial court's finding that Zeppieri's ignorance of law was inexcusable was not clearly erroneous because (1) Zeppieri has been involved in medical malpractice actions since his admission to the bar in 2006, (2) *Lucisano* and *Bell* were issued more than six years before *Riccio I* was commenced, (3) in the six year period after *Lucisano* and *Bell* were decided, Zeppieri testified that he filed five medical malpractice actions in which he failed to comply with the requirements in *Lucisano* and *Bell*, and (4) prior to filing *Riccio I*, Zeppieri had not read *Lucisano* and *Bell*.[5]

We begin with the standard of review and relevant legal principles. "A determination of the applicability of § 52-592 depends on the particular nature of the conduct involved. . . . This requires the court to make factual findings, and [a] finding of fact will not be disturbed unless it is clearly erroneous. . . . [T]he question of whether the court properly applied § 52-592 presents an issue of law over which our review is plenary." (Citations omitted; internal quotation marks omitted.) *Estela* v. *Bristol Hospital, Inc.*, 179 Conn. App. 196, 215, 180 A.3d 595 (2018).

As we have explained, "the accidental failure of suit statute can be traced as far back as 1862 . . . and is

a savings statute that is intended to promote the strong policy favoring the adjudication of cases on their merits rather than the disposal of them on the grounds enumerated in § 52-592 (a). . . . We note, however, that this policy is not without limits. If it were, there would be no statutes of limitations. Even the saving[s] statute does not guarantee that all plaintiffs have the opportunity to have their cases decided on the merits. It merely allows them a limited opportunity to correct certain defects in their actions within a certain period of time." (Citations omitted; internal quotation marks omitted.) *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 355, 63 A.3d 940 (2013). We have previously explained that § 52-592 (a) is ambiguous regarding what constitutes a "matter of form"; *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 49; and have declined to adopt an extremely broad construction of the accidental failure of suit statute to the effect that " '[t]he phrase, "any matter of form," was used in [contradistinction] to matter of substance, as embracing the real merits of the controversy between the parties.' " Id., 50. Rather, we have emphasized that § 52-592 (a) "does not authorize the reinitiation of all actions not tried on . . . [their] merits" and that, "[i]n cases [in which] we have either stated or intimated that the any matter of form portion of § 52-592 would not be applicable to a subsequent action brought by a plaintiff, we have concluded that the failure of the case to be tried on its merits had not resulted from accident or even simple negligence." (Internal quotation marks omitted.) *Lacasse* v. *Burns*, 214 Conn. 464, 473, 572 A.2d 357 (1990).

In particular, with respect to similar health care provider opinion letters, "a plaintiff may bring a subsequent medical malpractice action pursuant to the matter of form provision of § 52-592 (a) *only when the trial court finds as a matter of fact* that the failure in the first action to provide an opinion letter that satisfies § 52-190a (a) was the result of mistake, inadvertence or excusable neglect, rather than egregious conduct or gross negligence on the part of the plaintiff or his attorney." (Emphasis added.) *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 56. The plaintiff bears the burden of proving that the prior dismissal was the result of mistake, inadvertence, or excusable neglect and, therefore, a "matter of form" within the meaning of § 52-592. See *Ruddock* v. *Burrowes*, 243 Conn. 569, 576–77, 706 A.2d 967 (1998) ("[t]o enable *a plaintiff to meet the burden* of establishing the right to avail himself or herself of the statute, a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was a 'matter of form' " (emphasis added)). In *Plante*, we emphasized the "case-sensitive nature of the inquiry under § 52-592 (a) . . . ." *Plante* v. *Charlotte Hungerford Hospital*, supra, 56 n.21; see also id., 57 n.21 ("a plaintiff seeking relief under the matter of form provision of § 52-592 (a) does so at

his or her peril, given the *case-sensitive nature of the determination* that the failure as a matter of form was not based on 'egregious' conduct by the party or counsel" (emphasis added)). As the Appellate Court has aptly put it, "[t]he inquiry under § 52-592 . . . may be conceptualized as a continuum whereupon a case must be properly placed between one extreme of dismissal for mistake and inadvertence, and the other extreme of dismissal for serious misconduct or cumulative transgressions." *Skinner* v. *Doelger*, 99 Conn. App. 540, 554, 915 A.2d 314, cert. denied, 282 Conn 902, 919 A.2d 1037 (2007).

Relevant to this case, § 52-190a (a) requires that a plaintiff bringing a medical malpractice action include an opinion letter of a similar health care provider stating that there is evidence of medical negligence. Specifically, the statute provides in relevant part: "No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death . . . in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, *the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c,* which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . ."[6] (Emphasis added.) General Statutes § 52-190a (a).

In 2011, the Appellate Court held that "the language of § 52-190a, read in the context of § 52-184c, clearly and unambiguously requires that the qualifications of the opinion letter author be set forth" in the opinion letter. *Lucisano* v. *Bisson*, supra, 132 Conn. App. 468. That holding was reaffirmed several months later by the Appellate Court in *Bell* v. *Hospital of Saint Raphael*, supra, 133 Conn. App. 560–61. This court has not yet had occasion to address whether § 52-190a requires the qualifications of the opinion letter author to be included in the letter, and the parties in this appeal do not challenge the holdings of *Lucisano* and *Bell*. Accordingly,

we express no opinion on the matter other than to note that the trial court was bound by those precedents.

Here, there is no dispute that, in *Riccio I*, the plaintiff's attorney did not comply with the requirement in *Lucisano* and *Bell* that the opinion letters contain a statement regarding the qualifications of the author. Zeppieri testified that he had not read the two Appellate Court decisions and became aware of them only when the defendant filed its motion to dismiss in *Riccio I*. The plaintiff characterizes this as excusable neglect, which would permit § 52-592 to save her cause of action. The defendant, on the other hand, contends it is gross negligence, which would preclude the application of § 52-592. The question we must decide is whether the trial court correctly determined that the plaintiff failed to establish that Zeppieri's admitted failure to know of two Appellate Court decisions, issued six years before plaintiff initiated the first action, was a mistake, inadvertence, or excusable neglect rather than egregious conduct or gross negligence.

We begin with the definitions of "gross negligence" and "egregious." Connecticut law "does not recognize degrees of negligence and, consequently, does not recognize the tort of gross negligence as a separate basis of liability." *Hanks* v. *Powder Ridge Restaurant Corp.*, 276 Conn. 314, 337, 885 A.2d 734 (2005). We have, however, defined gross negligence as "very great or excessive negligence, or as the want of, or failure to exercise, even slight or scant care or slight diligence . . . ." (Internal quotation marks omitted.) Id., 338; see also *C & H Electric, Inc.* v. *Bethel*, 312 Conn. 843, 869, 96 A.3d 477 (2014) ("[g]ross negligence requires conduct that 'betokens a reckless indifference to the rights of others' "); *Hanks* v. *Powder Ridge Restaurant Corp.*, supra, 352 (*Norcott, J.*, dissenting) ("[t]his court has construed gross negligence to mean no care at all, or the omission of such care [that] even the most inattentive and thoughtless seldom fail to make their concern, evincing a reckless temperament and lack of care, practically [wilful] in its nature" (internal quotation marks omitted)); 57A Am. Jur. 2d 296–97, Negligence § 227 (2004) (" 'Gross negligence' means more than momentary thoughtlessness, inadvertence or error of judgment; hence, it requires proof of something more than the lack of ordinary care. It implies an extreme departure from the ordinary standard of care, aggravated disregard for the rights and safety of others, or negligence substantially and appreciably greater than ordinary negligence." (Footnotes omitted.)). Similarly, "egregious" is defined as "[e]xtremely or remarkably bad; flagrant . . . ." Black's Law Dictionary (11th Ed. 2019) p. 652; see also American Heritage College Dictionary (4th Ed. 2007) p. 447 (defining "egregious" as "[c]onspicuously bad or offensive"); Webster's New International Dictionary of the English Language (2d Ed. 1953) p. 821 (defining "egregious" as "[c]onspicuous

for bad quality; flagrant; gross; shocking").

Although not precisely the same procedural posture, in determining whether Zeppieri's conduct was egregious or amounted to gross negligence, we find instructive our decision regarding disciplinary dismissals in *Ruddock* v. *Burrowes*, supra, 243 Conn. 569, given that, in the present case, Zeppieri was unaware of controlling appellate case law, which the trial court characterized as "misconduct." In *Ruddock*, this court determined that "[d]isciplinary dismissals do not, in all cases, demonstrate the occurrence of misconduct so egregious as to bar recourse to § 52-592." Id., 576. Rather, the court explained, whether the dismissal of a prior proceeding permitted a plaintiff recourse to the savings statute "*depends* [*on*] *the nature and the extent of the conduct that led to the disciplinary dismissal.*" (Emphasis added.) Id., 570. Thus, not all negligence on the part of an attorney is per se gross negligence or egregious conduct because § 52-592 distinguishes between excusable neglect and gross negligence. Indeed, § 52-592 comes into play only when an error has been made, most often by an attorney. A trial court, therefore, must make factual findings and explain why the attorney's error is egregious or gross negligence and not excusable neglect. Cf. id., 577 ("We have not often decided that a plaintiff, after a dismissal under an applicable rule of practice, should be denied access to [§ 52-592 (a)] because the prior judgment was not a 'matter of form.' When we have done so, our decision has focused on *conduct other than mistake, inadvertence or excusable neglect.*" (Emphasis added.)). In short, "the egregiousness of the conduct precipitating the dismissal must be examined in determining whether § 52-592 applies in a given instance."[7] *Vestuti* v. *Miller*, 124 Conn. App. 138, 144, 3 A.3d 1046 (2010).

With this background in mind, we turn to the cases in which we have placed an attorney's conduct on the spectrum of excusable neglect and gross negligence to determine the applicability of the accidental failure of suit statute. We have previously held that the failure to submit an opinion letter from a similar health care provider and the failure to submit any opinion letter at all constitutes gross negligence such that a plaintiff cannot make use of the accidental failure of suit statute. First, in *Plante*, this court upheld the trial court's determination that the failure to submit an opinion letter from a similar health care provider constituted gross negligence. *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 57. Specifically, this court stated: "[W]e agree with the hospital defendants that § 52-592 (a) did not permit the plaintiffs to bring [the] action against them after dismissal of the original action. The trial court found that the 'decision to engage . . . [the nurse expert] to review the file and to provide a written opinion of negligence is inexplicable. Even a cursory reading of § 52-190a would have revealed that . . . [the

nurse expert] did not qualify as a similar health care provider.' . . . The trial court's finding is particularly apt given that [the nurse expert] is neither a physician nor a social worker, and even her psychiatric nursing experience was scant. . . . Thus, we agree with the trial court's determination that the 'plaintiffs' lack of diligence in selecting an appropriate person or persons to review the case for malpractice can only be characterized as blatant and egregious conduct [that] was never intended to be condoned and sanctioned by the "matter of form" provision of § 52-592.' " (Citation omitted; emphasis omitted.) Id. Most recently, in *Santorso*, this court agreed with the trial court's finding that "[i]t [could not] be said that counsel's failure to file a good faith certificate and opinion letters in [the first action] was the result of mistake, inadvertence, or excusable neglect." (Internal quotation marks omitted.) *Santorso* v. *Bristol Hospital*, supra, 308 Conn. 358. The court found it particularly significant that, "because the plaintiff's counsel declined the court's invitation to explain the failure to comply with the requirements of § 52-190a (a), there is no record that might support a finding that [counsel's] conduct was due to [mistake, inadvertence, or excusable neglect], and the court must conclude that his action was deliberate." (Internal quotation marks omitted.) Id.

In related contexts, courts have held that the failure to know controlling law may constitute gross negligence. Rule 60 (b) of the Federal Rules of Civil Procedure is similar to § 52-592 in that it allows a court to vacate a "final judgment, order, or proceeding" within one year of the decision based on a finding of "mistake, inadvertence, surprise, or excusable neglect . . . ."[8] Federal courts have explained that, "[w]hile [r]ule 60 (b) (1) allows relief for 'mistake, inadvertence . . . or excusable neglect,' *these terms are not wholly open-ended. 'Gross carelessness is not enough. Ignorance of the rules is not enough, nor is ignorance of the law.*' " (Emphasis added.) *Pryor* v. *U.S. Postal Service*, 769 F.2d 281, 287 (5th Cir. 1985); see also *Thompson* v. *E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir. 1996) ("inadvertance, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect" (internal quotation marks omitted)); *United States* v. *Erdoss*, 440 F.2d 1221, 1223 (2d Cir.) ("[t]he law in this circuit is reasonably clear when a conscious decision has been made by counsel, ignorance of the law is not the sort of excusable neglect contemplated by [f]ederal [c]ivil [r]ule 60 (b)" (internal quotation marks omitted)), cert. denied sub nom. *Horvath* v. *United States*, 404 U.S. 849, 92 S. Ct. 83, 30 L. Ed. 2d 88 (1971); *Vaden* v. *Connecticut*, 557 F. Supp. 2d 279, 293 (D. Conn. 2008) ("[t]he Second Circuit has consistently declined to relieve a client . . . of the burdens of a final judgment [rendered] against him due to the mistake or omission of his attorney by reason of

the latter's ignorance of the law or other rules of court" (internal quotation marks omitted)).

State courts have also held that ignorance of the law does not constitute excusable neglect in related contexts. See, e.g., *Madill* v. *Rivercrest Community Assn., Inc.*, 273 So. 3d 1157, 1160 (Fla. App. 2019) (" '[e]xcusable neglect cannot be based [on] an attorney's misunderstanding or ignorance of the law' "); *Whitefish Credit Union* v. *Sherman*, 367 Mont. 103, 109, 289 P.3d 174 (2012) ("[e]xcusable neglect requires some justification for an error beyond mere carelessness or ignorance of the law on the part of the litigant or his attorney"). Significantly, the Colorado Supreme Court has held that an attorney's ignorance of controlling case law constituted gross negligence. *People* v. *Barber*, 799 P.2d 936, 940 (Colo. 1990). The court explained that "[i]t is objectively unreasonable for the respondent to claim reliance on a federal district court decision with which this court expressly disagreed on the precise point of Colorado law raised here." Id., 939. The court noted that the attorney's "contrary conclusion was based only on a cursory examination of the annotations to [the statute of limitations]. Even if we were to believe the respondent, given the time available and the urgings of his clients to proceed, legal research [that] was so obviously inadequate on a question of such magnitude would constitute gross negligence . . . ." Id., 940.

Here, Zeppieri acknowledged before the trial court that it was a mistake not to have been aware of controlling case law before commencing *Riccio I* but otherwise provided no explanation for his actions. The twenty page transcript that contains the entire evidentiary record on this issue indicates only that Zeppieri had not read *Lucisano* or *Bell* until it became an issue in this case. The record also contains no information explaining why the plaintiff's other attorney, Kevin Ferry, failed to comply with *Lucisano* and *Bell*. On cross-examination, Zeppieri explained: "I had not read [*Lucisano*], which had attached a new requirement to the statute that is not in the text of the statute. There's no requirement in [§ 52-190a] that the letter include that material. The requirement came only as a result of the Appellate Court's . . . decision in *Lucisano* . . . ." There is no testimony regarding whether Zeppieri had conducted any research or otherwise explaining why he was unaware of the two Appellate Court decisions. As a result, we agree with the trial court that Zeppieri failed to meet his burden of proving that the dismissal of *Riccio I* was the result of mistake, inadvertence, or excusable neglect. See *Ruddock* v. *Burrowes*, supra, 243 Conn. 576–77. In the absence of further explanation—such as the failure to uncover *Lucisano* and *Bell* despite diligent research—we agree with the trial court's determination that Zeppieri's admitted failure to know of controlling Appellate Court case law, decided six years before he initiated the action, constituted

gross negligence. As in *Santorso*, in which the plaintiff's counsel failed to explain his noncompliance with § 52-190a (a); see *Santorso* v. *Bristol Hospital*, supra, 308 Conn. 358; Zeppieri failed to explain his noncompliance with *Lucisano* and *Bell*. Accordingly, there is no evidence in the record from which to conclude that Zeppieri's failure to know of the controlling Appellate Court case law was an accident, inadvertence, or excusable neglect.

The plaintiff nevertheless contends that the trial court improperly applied the legal maxims " 'that everyone is presumed to know the law, and that ignorance of the law excuses no one . . . .' " We agree with the plaintiff that application of such legal maxims would violate the requirement in *Plante* that a court place an attorney's actions on the continuum of mistake, inadvertence, or excusable neglect, on the one hand, and dismissal for egregious conduct or gross negligence, on the other.[9] *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 50–51, 56. We disagree, however, that the trial court failed to place Zeppieri's conduct on the continuum. As the trial court found: (1) Zeppieri has practiced in the "complex, vigorously contested area of medical malpractice law" since his admission to the bar in 2006; (2) "[t]he adequacy of a 'similar health care provider' opinion letter is one of the most frequently litigated pretrial issues in medical malpractice actions"; (3) *Lucisano* and *Bell* were decided more than six years before *Riccio I* was commenced; (4) after *Lucisano*, there could be no doubt that the plaintiff was required to include "sufficient qualifications of the author in the opinion letter to demonstrate compliance with § 52-190a"; (5) in the six year period after *Lucisano* and *Bell* were decided, Zeppieri testified that he filed five medical malpractice actions in which he had failed to comply with the requirements in *Lucisano* and *Bell*; and (6) prior to filing *Riccio I*, Zeppieri had not read *Lucisano* and *Bell*. This is not a situation in which the plaintiff's counsel inadvertently omitted necessary information from the opinion letter. Zeppieri was completely unaware of the requirement to include the qualifications of the author of the letter. Even cursory research into the requirements of the similar health care provider opinion letter would have revealed this requirement. Section 52-592 is designed to aid the " 'diligent suitor' "; *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 733, 557 A.2d 116 (1989); not to excuse the failure of counsel to conduct a basic inquiry into the requirements of § 52-190a (a) and case law interpreting that provision, which we can only characterize as the failure to exercise even " 'slight diligence . . . .' " *Hanks* v. *Powder Ridge Restaurant Corp.*, supra, 276 Conn. 338.

Given the fact intensive nature of the inquiry under § 52-592 (a); *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 56–57 n.21; we need not decide whether different factual circumstances—such as counsel's fail-

ure to know of a decision from an appellate court released in closer proximity to the commencement of the first action or his failure to uncover controlling appellate precedent despite diligent research—might constitute excusable neglect and save the plaintiff's otherwise time barred action under § 52-592. As we explained in *Plante*, "a plaintiff seeking relief under the matter of form provision of § 52-592 (a) does so at his or her peril, given the *case-sensitive nature of the determination* that the failure as a matter of form was not based on 'egregious' conduct by the party or counsel."[10] (Emphasis added.) Id., 57 n.21.

We note that plaintiffs whose time barred actions are not saved by § 52-592 due to their attorney's gross negligence are not left without recourse. In certain circumstances, a plaintiff may have recourse in a legal malpractice action. Cf. *Link* v. *Wabash Railroad Co.*, 370 U.S. 626, 634 n.10, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) ("[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because [the] plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of [the] plaintiff's lawyer upon the defendant." (Emphasis omitted.)); *Friezo* v. *Friezo*, 281 Conn. 166, 196, 914 A.2d 533 (2007) ("incompetence is an insufficient reason to avoid imputing knowledge to the plaintiff, who could have sought appropriate legal redress by filing a malpractice claim against [her former attorney] but did not do so"), overruled in part on other grounds by *Bedrick* v. *Bedrick*, 300 Conn. 691, 17 A.3d 17 (2011). Because that issue is not before us, we express no opinion about whether this case might satisfy the separate legal malpractice standard.

The judgment is affirmed.

In this opinion the other justices concurred.

* January 13, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment."

[2] During the hearing, Zeppieri testified that, in all of those cases that he participated in since *Lucisano* and *Bell* had been decided, the expert opinion letters he filed did not include statements of the expert's qualifications. He also testified that all six cases went to verdict or settlement without the defendant's counsel raising a motion to dismiss based on the failure of the expert opinion letters to include the statement of qualifications.

[3] The trial court also rejected the plaintiff's argument that the failure to file legally sufficient medical opinion letters in *Riccio I* was a scrivener's error. It further rejected the plaintiff's contention that she met the intent of the law because both experts were properly credentialed. The court explained that the plaintiff "filed no affidavits or other documentation in opposition to the motion to dismiss and offered no evidence at the [eviden-

tiary hearing] as to the opinion letter authors' qualifications. Consequently, the court cannot determine whether the experts who authored letters in *Riccio I* were properly credentialed or whether the intent of § 52-190a was met, namely, protecting health care providers from frivolous malpractice actions."

[4] The plaintiff also contends that the trial court erred when it failed to consider whether the authors of the opinion letters were in fact similar experts or were qualified to testify at trial as part of its evaluation of whether the plaintiff's attorney's conduct was a mistake, inadvertence, or excusable neglect. On this point, the trial court explained, "the plaintiff's [counsel's] failure to provide this court with evidence as to the qualifications of the authors of the *Riccio I* opinion letters precluded the court from considering whether the authors are 'similar health care providers,' as defined by § 52-184c (b) [and] (c), or whether either might be otherwise qualified to testify at the trial of the action pursuant to § 52-184c (d)."

[5] As an alternative ground for affirmance, the defendant contends that the opinion letters filed in *Riccio II* still do not comply with the requirements of § 52-190a. Specifically, the defendant contends that one of the opinion letters fails to satisfy the requirement that it state that "there appears to be evidence of medical negligence and [include] a detailed basis for the formation of such opinion." General Statutes § 52-190a (a). The defendant claims that the other opinion letter is deficient because it does not comply with § 52-184c (b) in that it "contains no information that would permit the court to determine that the author has relevant experience 'within the five-year period before the incident giving rise to the claim.' " Finally, the defendant contends that, to the extent that we conclude that those opinion letters are legally sufficient, partial dismissal is required because the opinion letters "fail to show that the authors are similar health care providers to anyone other than nurses and internists." The plaintiff contends that the defendant's alternative grounds for affirmance are not yet ripe and, therefore, should not be considered. The plaintiff also disagrees with the merits of those claims. Given our conclusion that the plaintiff's first action was not dismissed based on a matter of form, we need not reach the defendant's alternative grounds for affirmance.

[6] The validity of the opinion letter under § 52-190a depends in part on whether the author of that letter qualifies as a "similar health care provider," which is defined in General Statutes § 52-184c (b) as one who "(1) [i]s licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim." See also General Statutes § 52-184c (c) (setting forth requirements for similar health care provider when defendant is certified as specialist).

[7] Indeed, cases have been remanded to the trial court for failure to appropriately weigh evidence and determine credibility resulting in an insufficient evidentiary basis for a case to be accurately placed on the § 52-592 continuum. For example, in *Vestuti* v. *Miller*, 124 Conn. App. 138, 3 A.3d 1046 (2010), the Appellate Court explained: "[T]he plaintiff should be afforded the opportunity to have the court determine this issue—that the judgment of nonsuit [was rendered] due to the mere inadvertence of the plaintiff's attorney—especially given the surrounding circumstances in which the plaintiff's attorney knew for months in advance the date of the mandatory pretrial conference and yet still failed to notify both the plaintiff of the conference and the presiding judge that she would not attend. Without the trial court appropriately weighing the evidence and determining credibility, there is an insufficient evidentiary basis for this case to be accurately placed on the § 52-592 continuum." Id., 146–47; see also *Ruddock* v. *Burrowes*, supra, 243 Conn. 578 (ordering trial court on remand to make findings of fact with respect to "the circumstances of the plaintiffs' claimed justification for nonappearance at the pretrial conference").

[8] We acknowledge that rule 60 (b) of the Federal Rules of Civil Procedure pertains to opening judgments, including for cases that have been tried on the merits, and is not identical to § 52-592. Our discussion of rule 60 (b), and the various state court cases that follow, is intended to highlight the various situations in which courts have considered whether an attorney's negligence may constitute gross negligence or excusable neglect. See, e.g., *Pioneer Investment Services Co.* v. *Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 393–95, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) (noting that, under rule 60 (b), attorney negligence can constitute excusable neglect and

rejecting notion that attorney negligence is per se inexcusable neglect). Nothing in this opinion should be read to import the analytic framework from the rule 60 (b) context into an analysis under § 52-592.

[9] We note that the plaintiff herself appears to advocate for a per se rule that the failure to know the law would never constitute egregious conduct or gross negligence. As with the legal maxims that "everyone is presumed to know the law" and "ignorance of the law excuses no one," we reject such an absolute rule, which is antithetical to the fact intensive inquiry § 52-592 demands.

[10] As she did before the trial court, the plaintiff also points to several other medical malpractice cases in which Zeppieri participated, wherein the similar health care provider opinion letters did not include statements concerning the author's qualifications. The plaintiff contends that, because these cases went to verdict or settlement without anyone raising a motion to dismiss based on the inadequacy of the opinion letters, this evinces the fact that these attorneys were also not aware of the requirement from *Lucisano* and *Bell*. We decline to speculate on why attorneys in separate medical malpractice actions may have chosen not to file a motion to dismiss. As the trier of fact, the trial court was free to reject Zeppieri's self-serving testimony that the only reason these attorneys had not filed motions to dismiss was because of their ignorance of the law. See, e.g., *Sun Val, LLC* v. *Commissioner of Transportation*, 330 Conn. 316, 330, 193 A.3d 1192 (2018) (" '[I]t is the quintessential function of the fact finder to reject or accept certain evidence, and to believe or disbelieve any expert testimony. . . . The trier may accept or reject, in whole or in part, the testimony of an expert offered by one party or the other.' ").